UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>WALKER TRENT GRANT,<br>Defendant. | Case No. 18-cr-00391-EMC-1<br><br>**FINAL PRETRIAL CONFERENCE ORDER** |

Defendant Walker Trent Grant has been charged with two violations of 18 U.S.C. § 1001(a)(2). Section § 1001(a)(2) provides in relevant part as follows:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully –
>
> . . .
>
> (2) makes any materially false, fictitious, or fraudulent statement or representation; . . .
>
> . . . .
>
> shall be fined under this title, imprisoned not more than 5 years . . . , or both.

18 U.S.C. § 1001(a)(2).

According to the government, Mr. Grant violated § 1001(a)(2) when, in applying for a pilot's license, he included false information in forms that he submitted to the Federal Aviation Administration ("FAA"). More specifically, the government claims that Mr. Grant made false statements related to his medical condition. Per the indictment, on January 19, 2017, and then (approximately a year later) on January 25, 2018, Mr. Grant allegedly made false statements on a FAA Form 8500-8

> that (i) he did not suffer from and had never been diagnosed with "frequent or severe headaches" (Question 18a), despite having represented to the U.S. Department of Veterans Affairs (VA) that he suffered from tension headaches, and (ii) . . . he did not receive medical disability benefits (Question 18y), despite having received service-related medical disability benefits from the VA, including benefits related to his tension headaches, since 2011.

Docket No. 1 (Indictment at 1-2).

## I. TRIAL DATE & LENGTH OF TRIAL

Jury selection shall take place on February 21, 2020. Counsel shall be present in the Courtroom at 8:00 a.m.

The jury trial shall begin on February 24, 2020. Trial shall last from 8:30 a.m. to 2:00 p.m. on each day, except for Thursdays, which are dark. On all trial days counsel shall be present in the Courtroom at 8:15 a.m. to discuss any matters requiring resolution prior to commencement of trial at 8:30 a.m.

The parties estimate that the trial shall last for approximately one week. The parties will endeavor to abide by this estimate, as the Court will not be available March 4 and 5, 2020 should the case and deliberation extend into the following week.

## II. WITNESSES

A. Government

The government has identified the following individuals as witnesses it may call in its case-in-chief. *See* Docket No. 63 (witness list).

1. Dr. Susan Northrup.
2. Dr. Robert Gabbay.
3. James England.
4. Dr. Roger Tauran.
5. Laurie Freeman.
6. Reggie Lee.
7. Nicholas J. Sanzone.
8. Custodian of records (bank records).
9. Custodian of records (VA medical records).

2

10. Custodian of records (VA disability applications and decisions).

11. Custodian of records (FAA Forms 8500-8).

At the hearing, the government indicated that custodians of records would not need to be called because the parties had reached agreement on authenticity of records. Mr. Grant agreed.

B.  Defendant

Mr. Grant has identified the following individuals as witnesses he may call in his case-in-chief.

1. Rob Will.
2. Tracy Damico.
3. Elizabeth Brokaw.
4. Stephanie Grant.
5. Dr. Gregory Pinnell.

### III.  EXHIBITS

The government has filed objections to certain exhibits recently submitted by Mr. Grant. The Court shall discuss the objections with the parties at 8:00 a.m. on February 21, 2020, prior to starting the jury selection process.

Regarding other exhibits, Mr. Grant's motions to dismiss or suppress, as well as the both parties' motions in limine, are addressed below.

Exhibits, even if not objected to, are not automatically admitted. The proponent must move for admission of each exhibit at trial.

### IV.  DEFENDANT'S MOTION TO DISMISS OR FOR DISCOVERY (DOCKET NOS. 32-33)

Mr. Grant has also moved to dismiss the charges against him on the basis of selective enforcement. According to Mr. Grant, there has been selective enforcement because the VA Office of the Inspector General ("VA OIG") and the Department of Transportation ("DOT") "targeted veterans" in particular "by comparing VA records to FAA records." Mot. at 2. In the alternative, Mr. Grant asks for leave to conduct discovery to support his selective enforcement claim.

Both the motion to dismiss and the motion for discovery are **DENIED**. A claim of selective enforcement falls under the rubric of equal protection.

> Where [government] action does not implicate a fundamental right or a suspect classification, [an individual] can establish a "class of one" equal protection claim by demonstrating that [he] "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

*Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004) (addressing selective enforcement as an affirmative claim in a civil case). In the instant case, veterans are not a suspect class and no fundamental right is implicated; therefore, rational review applies.

Under this standard, the government's actions withstand scrutiny. There is a rational basis for the government's targeting of those who receive disability benefits. As the government argues:

> First, the receipt of benefits for a disabling condition presupposes that the pilot received a diagnosis from a medical professional and a determination from the agency dispensing the funds that the pilot was, in fact, disabled by that condition. The fact that there is a paper [trail] that establishes an undisclosed disabling condition is a rational basis to pursue an investigation of possible fraud.
>
> Second, pilots receiving disability benefits for diagnosed medical conditions have a greater incentive to withhold this information and deceive the FAA than pilots who may have the same diagnosed condition but do not receive benefits – the former pilots may fear that disclosure could jeopardize the benefits as well as the receipt of an Airman Medical Certificate.

Opp'n at 10.

To the extent Mr. Grant argues an equal protection violation because the government could be targeting pilots who receive veteran's benefits as opposed to those who received other kinds of disability benefits – *e.g.*, Social Security – Mr. Grant's own evidence indicates that the government has in fact pursued such others. *See* Mot., Ex. 2 (DOT document titled "Falsification of FAA Airman Medical Certificate Applications by Disability Recipients") (discussing "Operation Safe Pilot," a program conducted by DOT along with, *inter alia*, SSA).

**V.      DEFENDANT'S MOTION TO DISMISS OR SUPPRESS (DOCKET NO. 31)**

The government obtained Mr. Grant's medical records from the VA after obtaining an order from Judge James of this District. The order was not issued pursuant to a search warrant

4

predicated on probable cause. Mr. Grant moves to dismiss the charges against him on the ground that the government violated his Fourth Amendment rights when it obtained his medical records from the VA without a warrant.[1] In the alternative, Mr. Grant moves to suppress the medical evidence.

Mr. Grant's motion is **DENIED**. "To invoke the protections of the Fourth Amendment, a person must show he had a 'legitimate expectation of privacy.'" *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000).

> This inquiry . . . normally embraces two discrete questions. The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy" – whether . . . the individual has shown that "he seeks to preserve [something] as private." The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable,'" – whether . . . the individual's expectation, viewed objectively, is "justifiable" under the circumstances.

*Smith v. Maryland*, 442 U.S. 735, 740 (1979)

Here, it is highly doubtful that Mr. Grant had a subjective expectation that his VA medical records would be kept private from another government agency. The VA's Notice of Privacy Practices in effect at the time explicitly stated that "[w]e may disclose your health information to law enforcement agencies for law enforcement purposes when applicable legal requirements are met" – with one law enforcement purpose being identified as "[r]esponding to a specific request when in pursuit of a focused civil or criminal law enforcement investigation." Highsmith Decl., Ex. 1 (Notice at 3, 5) (emphasis omitted). *Cf. United States v. Cooper*, No. CR 05-0549 VRW, 2005 U.S. Dist. LEXIS 39116, at *15-18 (N.D. Cal. Dec. 28, 2005) (in a case where the government charged defendant with making false statements on a FAA form based on medical records it obtained from the Social Security Administration, holding that defendant "could not have expected that his medical information would be held in a level of confidence that would implicate the protection of the Fourth Amendment"; noting that form completed by defendant as

---

[1] In the caption of his motion, Mr. Grant also refers to the Due Process Clause of the Fifth Amendment. However, the body of the motion reflects that Mr. Grant seeks relief based on the protections provided by the Fourth Amendment only.

5

part of his SSA application for disability benefits indicated that disclosure could be made to other agencies for purposes other than making a determination on the disability claim).

Mr. Grant protests there is no evidence in the record that he actually received the VA's Notice (or that "veterans in general[] actually review" it), Reply at 5; however, Mr. Grant also does not deny that he received the Notice. Mr. Grant further argues that, per the Notice, disclosure is permitted to law enforcement only "when applicable legal requirements are met" and that such legal requirement means the Fourth Amendment. But that phrase does not expressly or clearly implicate the Fourth Amendment. Mr. Grant's argument is problematic because it presupposes that the Fourth Amendment is applicable – and here, the government's point is that the protections afforded by the Fourth Amendment are triggered only where there is a legitimate expectation of privacy in the first place. Mr. Grant's argument begs the central question.

No such reasonable expectation obtains here. Even if Mr. Grant did "harbor[] an expectation of privacy, the [C]ourt finds that [his] expectation of privacy is not one that society is prepared to accept as reasonable." *Cooper*, 2005 U.S. Dist. LEXIS 39116, at *20. In this regard, the Court takes note that the U.S. Code contain provisions expressly allowing for disclosure of VA medical records in certain circumstances – *e.g.*, "[w]hen required by any department or other agency of the United States" and "[i]n any suit or other judicial proceeding when in the judgment of the Secretary such disclosure is deemed necessary and proper." 28 U.S.C. § 5701(b)(3), (5). Implementing regulations likewise permit disclosure of VA medical records. *See also* 38 C.F.R. § 1.506(a) (providing that "[a]ll records or documents required for official purposes by any department or other agency of the U.S. Government . . . shall be furnished in response to an official request, written, or oral, from such department or agency"); 38 C.F.R. § 1.513(b)(2) (providing that, *inter alia*, the Department of Justice "may, on request, be given pertinent information from medical records for use in connection with investigations conducted by these departments[;] [e]ach such request shall be considered on its merits, and the information released should be the minimum necessary in connection with the investigation conducted by [the] department[]"). *Cf. Cooper*, No. CR 05-0549 VRW, 2005 U.S. Dist. LEXIS 39116, at *20 (noting that the Privacy Act "reflects a societal determination that records containing information

knowingly and voluntarily submitted to one agency are not protected from disclosure to another agency without a warrant or consent when such disclosure is made for purposes of law enforcement").[2]

Moreover, Mr. Grant's expectation of privacy, viewed objectively in a larger context, is not justifiable given the specific circumstances at hand: *i.e.*, if an individual asks the federal government to award VA benefits and relies on VA medical records in support of the claim for benefits and obtains those benefits, he or she cannot reasonably expect that the federal government will not consider those records where those documents have obvious and direct significance to federal agency action – such as in an application with the FAA for a pilot's license – especially when public safety is at issue.

## VI.     <u>JURY INSTRUCTIONS AND VERDICT FORM</u>

The Court has reviewed the parties' filing on jury instructions and will separately file proposed jury instructions that it intends to give. The parties shall file any objections to the jury instructions within 24 hours of the Court filing of those instructions.

The Court takes the opportunity herein to address the main dispute regarding the jury instructions. The basic dispute relates to the fact that, in each count in the Indictment, the government charges Mr. Grant with making two false statements – one related to headaches *and* the other related to medical disability benefits. Mr. Grant asserts that, to be guilty of a count, the government must prove that *both* statements were false, as reflected by the use of the word "and" in the Indictment. *See* Docket No. 1 (Indictment at 1) (alleging that Mr. Grant falsely indicated that "(i) he did not suffer from and had never been diagnosed with 'frequent or severe headaches' (Question 18a), despite having represented to the U.S. Department of Veterans Affairs (VA) that

---

[2] At the hearing, Mr. Grant suggested that § 5701 cannot represent a societal determination regarding an expectation of privacy in VA medical records because the statute does not cover VA medical records in the first place. The Court does not agree. Section 5701(a) provides for confidentiality of all documents "pertaining" to a claim for VA benefits. 38 U.S.C. § 5701(a) (providing that "[a]ll files, records, reports, and other papers and documents pertaining to any claim under any of the laws administered by the Secretary . . . in the possession of the Department shall be confidential and privileged"). VA medical records (including treatment records) are used by a veteran to support a claim for benefits which must be periodically reviewed and renewed and thus are covered by § 5701. Mr. Grant last renewed his application to VA benefits in 2019

7

he suffered from tension headaches, *and* (ii) that he did not receive medical disability benefits (Question 18y), despite having received service-related medical disability benefits from the VA, including benefits related to his tension headaches, since 2011") (emphasis added); *see also* Docket No. 67 (arguing that "the instructions should mirror the government's decision to charge in the conjunctive and prosecute the case based on that Indictment"). Mr. Grant argues that "'false statement' or 'statement' in the above instruction should be in the plural," Joint Prop. Instr. at 6, and that at trial the government must prove *both* misstatements.

The Court rejects Mr. Grant's position. "When a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one of those conjunctively charged acts may establish guilt." *United States v. Booth*, 309 F.3d 566, 572 (9th Cir. 2002); *see also Turner v. United States*, 396 U.S. 398, 419-20 (1970) (noting that "26 U. S. C. § 4704 (a) makes it unlawful to purchase, sell, dispense, *or* distribute a narcotic drug not in or from the original package bearing tax stamps"; "[t]he general rule is that when a jury returns a guilty verdict on an indictment charging several acts *in the conjunctive, as Turner's indictment did*, the verdict stands if the evidence is sufficient with respect to any one of the acts charged") (emphasis added). Mr. Grant argues that "[t]he authority to charge multiple means does not equate with the power to allege the same *means* twice in the same count with reference to two different *statements*." Docket No. 67 (Memo. at 2) (emphasis in original). While the Court understands the distinction Mr. Grant is making, he has not shown how that distinction is material. Moreover, Mr. Grant does not cite any specific authority to support his position. Finally, the Court notes that, even if Mr. Grant were correct, the government could file a superseding indictment changing "and" to "or," and such an indictment would not prejudice Mr. Grant – he admitted at the Final Pretrial Conference herein that, even if the government had used "or" instead of "and," the preparation of his defense would have been the same; only his argument would be different. *Cf. United States v. Ramirez*, 694 F. App'x 548, 549 (9th Cir. 2017) (noting original indictment charged defendant with importing methamphetamine only and that the government filed a superseding indictment, adding a charge of importing heroin, on the first day of trial; stating that "the superseding indictment did not prejudice" defendant because "[h]is

8

defense – that he did not know the drugs were in the car – remained the same").

Because the Court rejects Mr. Grant's position, it agrees with the government that a unanimity instruction should be given as well as a special verdict form. The Court has reviewed the government's proposed unanimity instruction and special verdict form. The Court agrees with the government's proposals.

### VII. DEFENDANT'S MOTIONS IN LIMINE

A. First Motion to Exclude Evidence Under Rule 16 (Docket No. 54)

Mr. Grant has moved for exclusion of all documents and objects disclosed after the December 30, 2019, the deadline ordered by the Court for Rule 16 disclosures. Mot. at 1. The motion is **DENIED**.

- *Computer screenshots of the online MedXPress Form 8500-8 application.* The government's delay in producing the computer screenshots was relatively brief (just under two weeks). Mr. Grant has failed to identify any prejudice he suffered as a result of this relatively short delay. This is not surprising given that the evidence is publicly available and it is obvious the government would rely on the evidence given the charges filed against him. In this regard, the Court also notes that Mr. Grant may well have kept tabs on similar cases being prosecuted by the government, and the government relied on this evidence at the trial of one of these cases. *See United States v. Beyer*, No. CR-18-0392 CRB (N.D. Cal.), Docket No. 92 (Exhibit No. 1 on government's exhibit list, filed on 1/8/2020).

- *2019 Guide for Aviation Medical Examiners.* The government's delay in producing the Guide was also relatively brief (about two-and-a-half weeks). As above, Mr. Grant has failed to identify any prejudice he suffered as a result of this relatively short delay, which is not surprising given that the evidence is publicly available and that it is obvious the government would rely on the evidence given the charges filed against him. In this regard, the Court notes that the evidence was filed as part of the government's prosecution of a similar case *United States v. Chrisman*, No. CR-18-0390 VC (N.D. Cal.), Docket No. 34-2 (Exhibit No. 1

9

attached to Tse declaration, filed on 9/26/2019).

The Court acknowledges that this motion in limine also addresses additional evidence – in particular, evidence related to Dr. Northrup and evidence related to Dr. Gabbay. Evidence related to Dr. Northrup is discussed in Part VI.B, *infra*. Evidence related to Dr. Gabbay is discussed in Part VI.C, *infra*.

B. <u>Second Motion to Exclude Expert Testimony (Docket No. 55) and Sixth Motion to Exclude Expert Testimony (Docket No. 61)</u>

In two different motions, Mr. Grant has asked the Court to exclude the testimony of Dr. Northrup as untimely pursuant to Rule 16. *See* Fed. R. Crim. P. 16(a)(1)(G) (governing disclosures related to expert witnesses – *e.g.*, a summary must be provided that "describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications"). The motions are **DENIED**.

As a preliminary matter, the Court notes that the government initially argued Dr. Northrup's testimony is lay testimony only, and not expert testimony. However, in a recent filing, the government stated that, "[w]hile it is a close question as to whether Dr. Northrup is a lay or expert witness, the United States intends to offer Dr. Northrup as an expert witness at Defendant Grant's trial." Docket No. 85 (Memo. at 1). The Court thus proceeds on that basis.

The government first disclosed Dr. Northrup to Mr. Grant on December 31, 2019 (which was essentially consistent with the Court's order directing that Rule 16 disclosures be made by December 30, 2019). However, Mr. Grant fairly argues that the original disclosure did not provide sufficient specificity on at least some of Dr. Northrup's opinions – on Questions 18(a) and (y) in particular – until approximately two weeks later (on January 16, 2020). Moreover, the government provided more disclosures with respect to Dr. Northrup on January 23 and 25, 2020 – most notably, regarding Questions 18(c) and 18(x).

Although the Court does not condone the late disclosures and notes that, by making tardy disclosure, the government risks the sanction of exclusion, the critical issue is whether Mr. Grant has been prejudiced by the delay, particularly as trial in this case is not to begin until February 24, 2020. Pressed by the Court at the hearing, Mr. Grant was not able to identify any specific

10

prejudice resulting from the delayed disclosure. For example, although Dr. Northrup's opinions on Questions 18(a) and 18(y) were provided late, there is no claim that her opinions were a surprise,[3] and Mr. Grant had already been preparing a defense on Questions 18(a) and 18(y) as evidenced by the hiring of his own expert, Dr. Pinnell. Also, while Mr. Grant may have been delayed in his investigation of Dr. Northrup, there is not, at this point, any indication that he cannot conduct an adequate investigation of Dr. Northrup in advance of trial. Nor is there any indication that, because of the delay, he has not been able to obtain, in advance of trial, documents necessary for the cross-examination of Dr. Northrup. The Court therefore denies the motion to exclude Dr. Northrup from testifying at the trial.

However, in so ruling, the Court does not preclude Mr. Grant from moving for a continuance of the trial if he is able to articulate and demonstrate a specific basis as to how the delay in the disclosures related to Dr. Northrup has prejudiced him (*e.g.*, critical documents could not be obtained in time for trial notwithstanding due diligence).[4] In addition, although the Court shall permit Dr. Northrup to testify, it shall not allow her to provide opinions on Questions 18(c) and 18(x) (respectively, concerning unconsciousness and other illness) on Rule 402 and 403 grounds. In contrast, Dr. Northrup may testify about Question 19 (visits to health professionals within the last three years) as Mr. Grant has access to that information. Dr. Northrup's testimony is otherwise limited to the disclosures that the government has already provided or provided in Docket No. 85. Finally, as an additional safeguard for Mr. Grant, the Court shall allow Mr. Grant to voir dire Dr. Northrup at trial but in advance of her testimony (and outside the presence of the jury).

---

[3] For instance, it is hardly surprising that Dr. Northrup intends to testify that "an applicant's response to Question 18A is significant because migraine headaches can be completely incapacitating, can come on suddenly, and can affect an applicant's vision and ability to see clearly while piloting an aircraft." Mot., Ex. 9 (letter).

[4] At the hearing, Mr. Grant suggested that the late disclosures related to Dr. Northrup have prejudiced him because he has not yet been able to obtain copies of his safety records for trial. The issue may be moot because Mr. Grant expects to obtain the safety records shortly. However, if Mr. Grant does not obtain the records and thereafter moves for a continuance, he will have to show that it is the late disclosures of Dr. Northrup that actually gave rise to the need to obtain his safety records. At the hearing, the government argued that the need to obtain the safety records was clear long ago.

11

C. <u>Fourth Motion to Exclude Evidence Under Rule 16 (Docket No. 59)</u>

Mr. Grant has moved to exclude the testimony of Dr. Gabbay, as well as a letter he wrote to Mr. Grant, as untimely pursuant to Rule 16. The motion is **DENIED**.

The Court addresses first the testimony of Dr. Gabbay. For purposes of this opinion, the Court assumes that Rule 16 is applicable.[5] With this assumption, the critical question is – similar to above – whether the delay in disclosure of the witness interviews of Dr. Gabbay, the disclosure of which took place on or about January 17 and 21, 2020, has prejudiced Mr. Grant. As above, Mr. Grant has failed to identify any specific prejudice from the delayed disclosure, which is not surprising given that Mr. Grant has known of Dr. Gabbay long ago (as he was the AME who issued Mr. Grant's 2017 and 2018 airman medical certificates).

The Court therefore denies the motion to exclude Dr. Gabbay from testifying at the trial. However, in so ruling, the Court does not preclude Mr. Grant from moving for a continuance of the trial if he is able to articulate a specific bases as to how the delay in the disclosures related to Dr. Gabbay has prejudiced him. Furthermore, the Court shall allow Mr. Grant to voir dire Dr. Gabbay at trial but in advance of his testimony (and outside the presence of the jury).

As for the letter written by Dr. Gabbay (in which he terminated the physician-patient relationship), the Court also does not exclude the evidence because there is no showing of prejudice from the delayed disclosure. Indeed, the Court is hard pressed to see any prejudice because Mr. Grant has long known about the letter since the letter was written to him specifically.

D. <u>Fifth Motion to Exclude Evidence Under Rule 16 (Docket No. 60)</u>

Mr. Grant has moved to exclude the testimony of Dr. Tauran as untimely pursuant to Rule 16. The motion is **DENIED**.

The analysis above related to Dr. Gabbay is largely applicable here. That is, assuming Rule 16 is applicable, the critical issue is whether the delay in disclosure of the witness interview

---

[5] The government argues it does not, because the witness interviews of Dr. Gabbay constitute Jencks Act statements. *See* Fed. R. Crim. P. 16(a)(2) (providing that Rule 16 does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 [the Jencks Act]"); *see also* Opp'n at 4 (suggesting that the documents should not even be considered Jencks Act statements).

12

of Dr. Tauran, the disclosure of which took place on or about January 23, 2020, has prejudiced Mr. Grant. As above, Mr. Grant has failed to identify any specific prejudice, which is not surprising given that Mr. Grant has known of Dr. Tauran long ago (as he was a physician who examined Mr. Grant in conjunction with his VA disability claim for his headaches).

In so ruling, the Court does not preclude Mr. Grant from moving for a continuance of the trial if he is able to articulate a specific bases as to how the delay in the disclosure related to Dr. Tauran has prejudiced him. Furthermore, the Court shall allow Mr. Grant to voir dire Dr. Tauran at trial but in advance of his testimony (and outside the presence of the jury).

E. Third Motion to Exclude Evidence of Benefits Fraud (Docket No. 56)

Mr. Grant has moved to exclude evidence that he committed benefits fraud because such evidence is irrelevant and would be highly prejudicial. *See* Fed. R. Evid. 401-03. The Court **GRANTS** in part and **DENIES** in part Mr. Grant's motion. The government shall not make any argument that Mr. Grant engaged in benefits fraud (against the VA). Indeed, such an argument would be inconsistent with the government's position that Mr. Grant lied to the FAA. However, the government is not barred from relying on evidence related to Mr. Grant's VA disability claim (including his VA medical records) in support of its claim that Mr. Grant made inconsistent statements and lied to the FAA. If the jury makes an inference that Mr. Grant either lied to the FAA or to the VA, that is a matter that cannot be avoided. That being said, the only charges at issue in the instant case are false statements to the FAA, and the government may not argue to the jury that Mr. Grant committed benefits fraud by lying to the VA.

## VIII. GOVERNMENT'S MOTIONS IN LIMINE

A. Motion re Rule 404(b) (Docket No. 57)

The government has moved to admit certain evidence that could "be viewed as other potential crimes, wrongs, or acts" that fall within the rubric of Federal Rule of Evidence 404(b). Mot. at 6. The evidence consists of (1) FAA Forms 8500-8 that Mr. Grant filled out for prior years (2011, 2012, 2013, and 2015), as well as omissions from those forms, and (2) Mr. Grant's visits to health professionals for the three years prior to the dates that he filled out his 2017 and 2018 FAA Forms 8500-8, as well as his failure to disclose such visits on his 2017 and 2018 forms.

1  *See* Mot. at 8-9. According to the government, the evidence should not be considered "other

2  wrongs" evidence within the meaning of Rule 404(b) because it is inextricably intertwined with

3  evidence concerning the crime charged – *i.e.*, the evidence is "part of the transaction that serves as

4  the basis of the criminal charge evidence and necessary to allow the government a coherent and

5  comprehensible story regarding the commission of the crime." Mot. at 11; *see also United States*

6  *v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) (noting that there are "[t]wo general categories of

7  other act evidence [that] may be 'inextricably intertwined' with a charged crime and thus

8  exempted from the requirements of Rule 404(b)"). The government also argues that, even if the

9  evidence were covered by Rule 404(b), it should still be admitted because the government would

10 not be offering the evidence as character evidence (Rule 404(b)(1)) but rather for another purpose

11 (Rule 404(b)(2)) – *i.e.*, as proof of motive and intent. Finally, the government asserts that Rule

12 403 is not a bar to the evidence because the probative value of the evidence is not "substantially

13 outweighed by a danger of [*e.g.*] unfair prejudice." Fed. R. Evid. 403.

14 In response, Mr. Grant states that he "has no objection to the government's motion."

15 Opp'n at 1. Records of Mr. Grant's visits to health professionals is inextricably intertwined with

16 the evidence concerning the crime charged; the prior Form 8500-8 are also relevant to his motive

17 and intent under Rule 404(b). Accordingly, the Court hereby **GRANTS** the government's motion

18 and deems the evidence at issue admissible.

19 B.     Motion to Permit Authentication Under Rule 902 Without Witnesses (Docket No. 57)

20 The government has moved for a Court ruling that certain documents are self-

21 authenticating public records – in particular, "(1) Defendant's medical disability applications and

22 rating decision[s] as well as his medical records from the Veterans Administration (VA); (2) the

23 FAA Forms 8500-8; and (3) Defendant's bank records." Mot. at 15. The government notes that it

24 has asked Mr. Grant to stipulate to the authenticity of such records.

25 In response, Mr. Grant states that he "has no objection to proceeding consistent with the

26 rules as set forth by the government in its motion." Opp'n at 1. As this amounts to an agreement

27 to stipulate to the authenticity of the above documents (as confirmed by Mr. Grant at trial), the

28 Court **GRANTS** the government's motion. Given this ruling, the government need not offer

14

custodian of records to authenticate the above documents.

C. <u>Motion to Preclude Evidence that Defendant Would Have Received Airman Medical Certificates (Docket No. 57)</u>

The government has moved to preclude evidence that, if Mr. Grant "had revealed his medical history and the fact that he was receiving medical disability benefits, he would have obtained an airman medical certificate." Mot. at 19. According to the government, it "is only required to show that Defendant's false statements had the *capability* of influencing the FAA, not that Defendant would [actually] have been denied an airman medical certificate in 2017 and 2018 based on them." Mot. at 19 (emphasis added); *see also* 9th Cir. Model Crim. Jury Instruction No. 8.73 (listing essential elements for crime of false statement to a government agency under 18 U.S.C. § 1001; identifying one element as follows: "the [statement] [writing] was material to the activities or decisions of the [*specify government agency or department*]; that is, it had a natural tendency to influence, or was capable of influencing the agency's decisions or activities"); *United States v. Boone*, 951 F.2d 1526, 1545 (9th Cir. 1991) (stating that "[t]he materiality requirement of a [§ 1001] violation is satisfied if the statement is capable of influencing or affecting a federal agency[;] the false statement need not have actually influenced the government agency"). The motion is **GRANTED** in part and **DENIED** in part.

The Court agrees with the government that what the FAA would have done is not the issue, and therefore evidence and argument on what the FAA would have done had the answers on Questions 18(a) and 18(y) been truthful is not the issue and are thus excluded. That being, the Court does not agree with the government that Mr. Grant thereby cannot provide any evidence as to his medical condition or any evidence related to his safety record. That evidence is, at the very least, relevant to Mr. Grant's subjective state of mind in responding to Question 18(a) (*i.e.*, whether he had ever been diagnosed with or had frequent or severe headaches). To the extent the government has concerns about jury confusion, the jury will be instructed on the issue of materiality; in addition, the government is not barred from arguing to the jury that it is irrelevant what the FAA actually would have done and that the relevance of the evidence is with respect to state of mind.

15

D. <u>Motion to Preclude Defendant from Introducing Own Hearsay Statements (Docket No. 57)</u>

The government has moved to preclude Mr. Grant from introducing his own hearsay statements "in his case-in-chief [as they are not *opposing* party statements under Rule 801(d)(2)], or 'back door' these statements by eliciting them from the government's witnesses on cross examination." Mot. at 57. Mr. Grant does not oppose the motion. It is therefore **GRANTED**.

E. <u>Motion to Preclude Reference to Punishment (Docket No. 57)</u>

The government has moved to preclude "any reference by the defense to the Defendant's potential sentence during all phases of the trial" – including, *e.g.*, "more subtle [references such as] 'this case has serious consequences for my client'" and 'the defendant's liberty is at stake in this trial.'" Mot. at 21. In response, Mr. Grant states that he does not intend to "refer to specific penalties" but does intend to inform the jury (including in voir dire and in closing argument) that "this case involves the potential loss of liberty and serious consequences for Mr. Grant." Opp'n at 4.

The government's motion is **GRANTED** in part and **DENIED** in part. Mr. Grant shall not make reference to any specific punishment. In addition, he may not refer to any potential loss of liberty given that it is not clear what Mr. Grant's sentence would actually be (*e.g.*, if convicted, he might be eligible for probation which, although a kind of loss of liberty, is not incarceration and the "loss of liberty" as that term is likely to be perceived by the jury). Mr. Grant, however, may refer to serious consequences of conviction.

F. <u>Motion to Exclude Character Witness Testimony (Docket No. 57)</u>

In his witness list, Mr. Grant has identified four individuals who will provide testimony about his character and reputation for honesty.

1. Rob Will.
2. Tracy Damico.
3. Elizabeth Brokaw.
4. Stephanie Grant.

In its motion, the government suggests that, at most, Mr. Grant should be allowed to have only three of the above witnesses testify, as having more would be cumulative evidence with

16

1  "weak probative value and great potential to confuse the issues and prejudice the jury." Mot. at
2  22. The government also argues that, given the Federal Rules of Evidence, the testimony of the
3  witnesses should be limited in certain respects. *See, e.g.*, Fed. R. Evid. 608(b) (providing that,
4  "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove
5  *specific* instances of a witness's conduct in order to attack or support the witness's character for
6  truthfulness[;] [b]ut the court may, on cross-examination, allow them to be inquired into if they are
7  probative of the character for truthfulness or untruthfulness of . . . (2) another witness whose
8  character the witness being cross-examined has testified about") (emphasis added).

In his opposition, Mr. Grant states that he will comply with the Federal Rules of Evidence and that character evidence will take the form of opinion and reputation.

The Court **RESERVES** ruling on the government's motion. At this point, it is not clear whether having all four witnesses testify (as opposed to, *e.g.*, three) would be cumulative, confuse issues, or prejudice the jury.

G.   Objection to Defense Expert Dr. Gregory Pinnell (Docket No. 73)

Mr. Grant has designated Dr. Gregory Pinnell as an expert witness who will testify in his case-in-chief. The government has objected to the entirety of his testimony. Below are the subject matters on which Dr. Pinnell intends to testify, *see* Docket No. 68 (Def.'s Witness List at 2), and the Court's rulings thereon. As detailed below, the objection is **SUSTAINED** in part and **DENIED** in part.

- "None of Mr. Grant's diagnoses would have resulted in denial of his FAA medical certificate." Dr. Pinnell cannot testify on this subject matter. What the FAA would have done is irrelevant; the issue is whether Mr. Grant's statements were capable of influencing the agency.
- "The term 'frequent and severe' headaches [as used in FAA Form 8500-8] is not synonymous with the term 'tension' headaches [with which Mr. Grant was diagnosed]." Dr. Pinnell is allowed to testify on this subject matter.
- "There is no quantitative measurement for 'prostrating' headaches [a term used by the VA in assessing Mr. Grant's claim for disability benefits]." Dr. Pinnell is

allowed to testify on this subject matter.

- "'Prostrating' headaches might or might not be 'frequent' or 'severe.'" Dr. Pinnell is allowed to testify on this subject matter.

- "There is no evidence of any mental disorder with respect to Mr. Grant." Mr. Grant has withdrawn this subject matter testimony as the government is not claiming any mental disorder.

- "The VA strongly encourages veterans, during out-processing, to service connect all conditions in order to establish a basis for future benefits including disability and healthcare (that is, to avoid being denied coverage for a worsening condition). Advice is given through the Transition Assistance Program and through Veteran Service Officers (advisers)." On the current record, Dr. Pinnell has not demonstrated a sufficient basis on which to provide the opinion, nor does he specify any methodology on how he derived that opinion. Further, it does not appear to be relevant (*i.e.*, even if the VA encourages veterans to connect conditions to service, it does not follow that veterans were encouraged to fabricate or exaggerate medical conditions in applying for VA benefits). If Mr. Grant believes that Dr. Pinnell may opine on narrow subject matters relevant and adequately supported, then he must disclose that opinion by February 19, 2020.

- "Discrepancies between VA benefits and information reported on FAA Form 8500-8 are not uncommon. The FAA has often allowed veteran pilots to correct such discrepancies." Again, there is a *Daubert* problem with the subject matter testimony; no bases or methodology for his opinion is disclosed. If Mr. Grant seeks to submit a revised disclosure, he must do so by February 19, 2020.

- "Regarding FAA 8500-8, Question 18(y) [asking about medical disability benefits] was not on the original form and was added later. The corresponding guide (issued by MedXpress) gives no guidance re Question 18(y)." Because Question 18(y) has been on the form since 2011 (*i.e.*, before Mr. Grant ever submitted any application to the FAA), the first part of the testimony is irrelevant; accordingly, Dr. Pinnell

18

cannot testify on that specific subject matter. As for whether there is guidance for 18(y), Dr. Pinnell may provide testimony on that specific fact.

Any objection by the government to revised disclosures must be filed by 12:00 p.m., February 20, 2020.

## IX. **JURY VOIR DIRE**

The Court shall conduct its own voir dire guided by the voir dire proposed jointly and separately by the parties, and thereafter shall allow each party twenty (20) minutes to voir dire the jury.

**IT IS SO ORDERED**.

Dated: February 18, 2020

_____
EDWARD M. CHEN
United States District Judge