UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>WALKER TRENT GRANT,<br>Defendant. | Case No. 18-cr-00391-EMC-1<br><br>**ORDER RE DEFENSE EXPERT DR. PINNELL**<br><br>Docket Nos. 98-99 |

Previously, the Court made rulings as to whether the defense expert, Dr. Pinnell, could express certain opinions. *See* Docket No. 96. Mr. Grant has now submitted revised opinions, and the government has objected in part. The Court addressed the objections at a hearing on February 21, 2020. This order memorializes the Court's oral rulings.

A.  Opinion No. 1

Dr. Pinnell's first opinion is as follows:

> If Mr. Grant had marked "yes" to 18A or 18Y, the AME would have requested appropriate follow up information. In light of Dr. Pinnell's review of the VA medical records, his opinion is that the majority of AMEs would have issued the certification as a normal issuance or based on the CACI program (which was designed to allow AME's to review medical documentation and issue certificates in the office for what were previously Special Issuance medicals which would need to be issued by the FAA directly).

Docket No. 98. The government has objected to this opinion as irrelevant and also moves to exclude the opinion under *Daubert*.

Relevance does appear to be a problem. A false statement is material if "(1) could affect or influence the exercise of governmental functions; or (2) has a natural tendency to influence or is

capable of influencing agency decision." *United States v. De Rosa*, 783 F.2d 1401, 1408 (9th Cir. 1986) (emphasis added); *see also United States v. Facchini*, 832 F.2d 1159, 1161 (9th Cir. 1987) (stating that "[§] 1001 applies broadly to 'protect the authorized functions of governmental departments and agencies from the perversion which might result from . . . deceptive practices'"); 9th Cir. Model Jury Instruction No. 8.73 (listing the following as an essential element to a § 1001 violation: "the [statement] [writing] was material to the activities *or* decisions of the [*specify government agency or department*]") (emphasis in original and added). Accordingly, what an AME (acting on behalf of the FAA) actually would have done is irrelevant.

Moreover, a false statement can be material independent of any impact or potential impact on agency decision-making. A false statement can be material if it simply could affect or influence the exercise of governmental functions. For example, in *United States v. Carrier*, 654 F.2d 559 (9th Cir. 1981), the government charged the defendant with violating § 1001(a) because he falsely answered "No" after he was asked, by Customs, whether he was carrying over $5,000 in currency when crossing the Canada-United States border. (In fact, he had almost $15,000 in Canadian currency.) The Ninth Circuit rejected the defendant's claim that his false statement was not material, stating as follows:

> Beyond question, the statement "No" could very well affect the exercise of governmental functions and agency decisions since it would have a tendency to prevent Customs from fulfilling their administrative duty to require persons entering the United States to file a currency reporting form in accordance with 31 U.S.C. § 1101.

*Id.* at 561-62.

Similarly, in *United States v. Safavian*, 649 F.3d 688 (D.C. Cir. 2011), the defendant was a federal employee being investigated by several government agencies, including the FBI, after taking a trip with a lobbyist. The defendant was charged with, *inter alia*, making false statements to an FBI agent during the course of the agency's investigation. The defendant argued that the government had failed to prove that his false statements to the FBI were material, but the D.C. Circuit rejected that argument, explaining that, "so long as [the defendant's] false statements were capable of influencing the course of the FBI's investigation – and we agree with the district court that but for the fortuity of the agent's preparation they could have done – those statements were

material within the meaning of § 1001(a)(1)." *Id.* at 691-92; *see also United States v. Mitchell*, 388 F.3d 1139, 1143 (8th Cir. 2004) (stating that "[t]he test is not whether the false statement was the determinative factor in an INS decision, but rather, whether the statement had a natural tendency to influence the INS"; here, because "the INS views violent crime as an 'elevating circumstance' in determining whether to devote resources to a visa fraud investigation[,] [a]n allegation of forced sex would . . . tend to influence a government agency by making the INS more likely to pursue the investigation"); *cf. United States v. Abraham*, 678 F.3d 370, 374 (5th Cir. 2012) (rejecting defendant's argument that his statement that he was a military prisoner's lawyer was not material because, regardless of who he claimed to be, he would not have been allowed access to the prisoner under the Army protocol in place; "[w]e agree that the *ultimate* decision the agency was called upon to make was whether the Defendant could have access to [the prisoner]" but "the jury reasonably could have concluded that the decision being made by Captain Bielling was not whether to allow the Defendant access to [the prisoner] at that instant, but whether the Defendant could see [the prisoner] after being cleared, and thus whether to advance him to the next step in the process by investigating his claims further") (emphasis added). In sum, materiality may be established by showing the falsity would tend to influence, *inter alia*, the course of the government's investigation.

In the instant case, therefore, the government can prove materiality if it shows, *e.g.*, that Mr. Grant's response to Question 18(a) or (y) was capable of influencing the course of the FAA's investigation into his medical fitness. The only wrinkle here is that Mr. Grant has now suggested, for the first time, that an AME is not, in fact, an agent of the FAA (noting, *e.g.*, that the patient pays the AME for his or her services, and not the FAA), and thus change in the course of the AME's investigation would not change the course of the FAA's investigation. Accordingly, the Court has asked the parties to provide supplemental briefing on what the relationship is between an AME and the FAA.

Putting aside the issue of relevance, however, the Court still excludes Dr. Pinnell's Opinion No. 1 based on *Daubert* grounds. There is an insufficient basis for Dr. Pinnell to express an opinion what an AME, or what a majority of AMEs, would have done *when presented with Mr.*

3

*Grant's situation*. Even if Dr. Pinnell has been an AME for almost 20 years and sees about 200 patients every 4 to 6 weeks, that does not mean that the patients he has seen are similarly situated to Mr. Grant and that the sample size of such individuals in his experience is such that he can reliably opine on what an AME, or a majority of AMEs, would have done.

B. <u>Opinion No. 3</u>

Dr. Pinnell's third opinion is as follows:

> The VA strongly encourages veterans, during out-processing, to service connect all conditions in order to establish a basis for future benefits including disability and healthcare (that is, to avoid being denied coverage for a worsening condition). Advice is given through the Transition Assistance Program and through Veteran Service Officers (advisers). Dr. Pinnell bases the opinion on his experience as a Senior Flight Surgeon for Air Force Reserve Command (19 years) which requires consulting with air crews subject to their VA out-processing. He has consulted with over 300 air crewmen regarding VA out-processing.

Docket No. 98. The Court shall not permit Dr. Pinnell to provide the above opinion. As the Court previously noted, there is a relevance problem. Even if the VA encourages veterans to connect medical conditions to service, "service connection" is not an issue in this case. Furthermore, there is a *Daubert* problem with Dr. Pinnell's opinion – *i.e.*, there is an insufficient basis for him to provide an expert opinion on VA policies or practices. Dr. Pinnell does not appear to be an employee or agent of the VA. Moreover, there is no indication that his experiences with consulting 300 air crewmen over 19 years are statistically significant. He cites no reports, surveys, or studies addressing the VA's policies or practice in this regard.

The Court reserves ruling, however, as to whether Dr. Pinnell may provide a narrower opinion as a lay witness – *e.g.*, providing testimony, based on his personal experiences, about connecting a medical condition to service as related to severity of the medical condition; but any such testimony is subject to a relevance determination.

C. <u>Opinion No. 4</u>

In his fourth opinion, Dr. Pinnell states:

> Dr. Pinnell sees omissions re 18A once every 4-6 weeks approximately. Dr. Pinnell also sees omissions re 18Y once every 4-6 weeks approximately. Dr. Pinnell will see approximately 200

4

|   |   |
|---|---|
| 1 | patients in the same time frame.  In his experience, the FAA will contact the pilot via mail once such an omission is identified.  It is the policy of the FAA to allow pilots to correct errors in the FAA 8500-8.  This policy is consistent with the FAA's policy of encouraging transparency. |

Docket No. 98.

The Court shall not permit Dr. Pinnell to provide the above opinion as part of the defense case-in-chief, for several reasons:

- Even if other people made false statements, that does not mean that Mr. Grant did not make a false statement.
- Dr. Pinnell's testimony suggests that his focus is what the FAA should have done (allow Mr. Grant to correct rather than initiate criminal proceedings against him) whereas the issue of materiality is whether the response to Question 18(a) or (y) was capable of influencing the course of the FAA's actions (including its investigation).
- Dr. Pinnell does not state what basis he has to opine about what the FAA's policies are.  Even if he is an AME for the FAA, he is not in a policy position and there is no indication that his experience makes him privy to FAA practices as a whole.]

The Court, however, reserves ruling as to whether Dr. Pinnell may provide a narrower opinion in rebuttal to the government's expert witness Dr. Northrup, subject to relevance and foundation considerations.

**IT IS SO ORDERED**.

Dated: February 21, 2020

_____
EDWARD M. CHEN
United States District Judge